UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SOUND ACTION, et al., <br><br> Plaintiffs, <br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS, <br><br> Defendant. | CASE NO. C18-0733JLR <br><br> ORDER GRANTING MOTION FOR VOLUNTARY REMAND |

## I. INTRODUCTION

Before the court is Defendant United States Army Corps of Engineers' ("the Corps") motion for voluntary remand. (Mot. (Dkt. # 37).) Plaintiffs Sound Action, Friends of the San Juans, and Washington Environmental Council (collectively, "Plaintiffs") oppose the motion. (Resp. (Dkt. # 38).) The Corps filed a reply. (Reply (Dkt. # 41).) The court has considered the motion, the parties' submissions concerning

//

the motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS the Corps' motion.

## II. BACKGROUND

In this lawsuit, Plaintiffs allege that a 2018 memorandum issued by the Corps regarding implementation of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.* in the Puget Sound region is arbitrary and capricious. (*See* Compl. (Dkt. # 1) ¶¶ 2-3.) Plaintiffs claim that the 2018 memorandum wrongfully reaffirmed a longstanding Corps interpretation of its CWA jurisdiction in the Puget Sound region that is contrary to the applicable CWA regulations. (*See id.*) Consequently, according to Plaintiffs, the Corps is underperforming its CWA oversight duties and exposing the Puget Sound shoreline to harmful environmental effects. (*Id.* ¶ 1.)

The Corps now offers to rescind both the 2018 memorandum and the allegedly offending interpretation that gave rise to this lawsuit on the condition that the court remand this case back to the Corps for further action. (*See* Mot. at 1-2.) Although the court has previously outlined the CWA regulatory regime and the Corps' historical interpretation of its jurisdiction under the CWA in the Puget Sound region in detail (*see* 2/5/19 Order (Dkt. # 21) at 2-7), that same background information remains relevant to the Corps' motion for remand. Thus, the court restates the relevant portions of that background below before reaching the merits of the Corps' motion.

//

---

[1] Neither party requests oral argument on the motion (*see generally* Mot.; Resp.), and the court concludes that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

## A. The Clean Water Act

Section 404 of the CWA prohibits the discharge of dredged or fill materials into navigable waters without a permit. (*See* Compl. ¶ 13 (citing 33 U.S.C. § 1344).) The CWA defines "navigable waters" as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362. As it relates to tidal waters, such as the Puget Sound tidal waters at issue in this litigation, the Corps defines "waters of the United States" to mean waters up to the "high tide line." (Compl. ¶ 16 (citing 33 C.F.R. § 328.4(b)).)

The Corps currently defines the "high tide line" as:

> [T]he line of intersection of the land with the water's surface at the maximum height reached by a rising tide. The high tide line may be determined, in the absence of actual data, by a line of oil or scum along shore objects, a more or less continuous deposit of fine shell or debris on the foreshore or berm, other physical markings or characteristics, vegetation lines, tidal gages, or other suitable means that delineate the general height reached by a rising tide. The line encompasses spring high tides and other high tides that occur with periodic frequency but does not include storm surges in which there is a departure from the normal or predicted reach of the tide due to the piling up of water against a coast by strong winds such as those accompanying a hurricane or other intense storm.

51 Fed. Reg. 41,206, 41,251 (Nov. 13, 1986) (originally codified at 33 C.F.R. § 328.3(d); codified at 33 C.F.R. § 328.3(c)(7) in 2015).

## B. High Tide Line

The dispute in this case centers on the Seattle District of the Corps' ("the Seattle District") interpretation and application of the definition of high tide line found in 33 C.F.R. § 328.3(c)(7). The Seattle District oversees CWA § 404 permits in the Puget Sound region on behalf of the Corps. (*Id.* ¶ 35.) Projects in the Puget Sound that are at or below the high tide line—as that term is defined under 33 C.F.R. § 328.3(c)(7)—are

within the Seattle District's jurisdiction. (*Id.* (citing 33 C.F.R. § 328.3(c)(7)).) The Seattle District currently uses the mean higher high water ("MHHW") datum to determine the high tide line and, consequently, the limit of its Section 404 jurisdiction in tidal waters. (*Id.* ¶ 36.) According to Plaintiffs, MHHW is "an average of the higher of the two high water marks each tidal day observed over a nineteen-year period." (*Id.* ¶ 2.)

Plaintiffs claim that the Seattle District's use of MHHW to determine the "maximum height reached by a rising tide" under 33 C.F.R. § 328.3(c)(7) is unlawful. (*Id.*) According to Plaintiffs, MHHW "is unequivocally significantly lower than the maximum height reached by a rising tide" and "is surpassed between three to five times a week in Washington state." (*Id.* ¶¶ 36-37.) In other words, "about a quarter of high tides" in the Seattle District's region are above MHHW. (*Id.* ¶ 37.) Plaintiffs allege that the Seattle District began using MHHW in the 1970s "when the CWA was initially passed because that was the highest tidal elevation data available at the time." (*Id.* ¶ 39.) Now, however, Plaintiffs claim there is data for higher tidal elevations that the Corps should use to determine its jurisdictional limits under the CWA. (*Id.* ¶¶ 39-41.)

According to Plaintiffs, the Corps' reliance on MHHW results in a number of environmental harms. Because the Corps' CWA jurisdiction extends only to the waters of the United States, *see* 33 U.S.C. § 1362, and the Corps' regulations define the limits of the waters of the United States as the high tide line, (*see id.* ¶ 35 (citing 33 C.F.R. § 328.3(c)(7)), Plaintiffs claim that the Corps' use of MHHW to define the high tide line instead of another, higher marker—the Highest Astronomical Tide ("HAT")—improperly

//

limits the Corps' jurisdiction under the CWA, (*id.* ¶ 2).[2] Plaintiffs allege that the Corps' improper high tide line measurement limits the Corps' review and permitting of shoreline armoring projects in the Puget Sound. (*Id.* ¶¶ 42-43.) Shoreline armoring involves the construction of seawalls, bulkheads, and similar structures in order to stabilize the shoreline. (*Id.* ¶¶ 15, 33.) Plaintiffs allege that shoreline armoring damages the Puget Sound ecosystem by disrupting species' spawning habitat and eliminating vegetation and finer-grained sediments. (*Id.* ¶¶ 29, 31-33.) These impacts allegedly affect forage fish and aquatic plants as well as endangered salmon and orcas. (*Id.* ¶ 31, 34.) Plaintiffs assert that shoreline armoring is one of the main impediments to restoring the Puget Sound habitat. (*Id.* ¶ 30.)

**C.     Interagency Workgroup**

In January 2016, the Seattle District, the Environmental Protection Agency ("EPA") Region 10, and the West Coast Region of the National Oceanic and Atmospheric Administration ("NOAA") formed an interagency workgroup to address the Seattle District's approach to determining the high tide line. (*Id.* ¶ 48.) In November 2016, the workgroup completed a draft report and recommended that the Corps adopt a different datum—the Mean Annual Highest Tide ("MAHT")—to determine the high tide line under 33 C.F.R. § 328.3(c)(7).[3] (*Id.* ¶¶ 48-49; *see also* 9/28/18 MTD (Dkt. # 13) at

//

---

[2] According to Plaintiffs, HAT is "the highest predicted periodic astronomical tide occurring every 19 years." (*Id.* ¶ 40.)

[3] MAHT is "the highest predicted periodic astronomical tide occurring every 19 years." (*Id.* ¶ 40.)

13, Ex. 2 ("Workgroup Report").) As explained in the report, the workgroup concluded that:

> MAHT[] is an elevation that is reasonably representative of the intersection of the land and the water's surface at the maximum height reached by the rising tide, is based on gravitational forces, is predictable, reliable, repeatable, reasonably periodic, measurable, simple to determine, scientifically defensible, and based on data that is reasonably available and accessible to the public.

(Compl. ¶ 49; Workgroup Report at 3.) Of the three tidal data points at issue—MHHW, which is currently in use by the Seattle District; MAHT, which was recommended by the interagency workgroup; and HAT, which is Plaintiffs' proposed tidal datum in this case—Plaintiffs state that "[MAHT] is substantially higher than [MHHW], but still below [HAT]." (Compl. ¶40.)

**D.    Major General Spellmon Memorandum**

On January 19, 2018, Major General Scott Spellmon, then the Commander of the Corps' Northwestern Division, wrote a memorandum to the Seattle District regarding the ongoing high tide line evaluation ("Spellmon Memo"). (Compl. ¶ 50; 9/28/18 MTD at 14, Ex. 1 ("Spellmon Mem.").) Major General Spellmon said that he had reviewed the workgroup's recommendation to use MAHT. (Spellmon Mem. at 1.) But he opined that "[f]urther efforts to study, re-evaluate or reinterpret the [high tide line] definition would not be an organizationally consistent use of resources within the Corps." (*Id.*) Major General Spellmon further stated: "I maintain that elevations such as MAHT as they would be applied in Puget Sound are not consistent with the intent of the current definition of [high tide line]." (*Id.*) He then "direct[ed]" the Seattle District "to shift

away from further consideration of changing the Corps Clean Water Act jurisdiction limit in tidal waters." (*Id.* at 2.)

**E.     Plaintiffs' Lawsuit and the Court's February 5, 2019 Order**

On May 21, 2018, Plaintiffs filed this action against the Corps. (*See* Compl.) Plaintiffs allege that the Corps' decision to maintain an unlawful Section 404 jurisdictional boundary, as reflected in the Spellmon Memo, is an arbitrary and capricious agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).[4] (*Id.* ¶¶ 57-63.) Plaintiffs ask the court to declare that the Spellmon Memo was arbitrary and capricious, order the Corps to "set aside" the Spellmon Memo, and require the Corps to adopt HAT to measure the high tide line in the Puget Sound region. (*Id.* at 21, ¶¶ A-B.)

On September 18, 2018, the Corps moved to dismiss Plaintiffs' claim of arbitrary and capricious agency action for lack of subject matter jurisdiction. (*See* 9/28/18 MTD.) The Corps argued that the Spellmon Memo was not "final agency action" and therefore was not reviewable under the APA. (*Id.* at 3.) The Corps also argued that Plaintiffs lacked standing even if the Spellmon Memo was final agency action. (*Id.*) The court disagreed. In its February 5, 2019, order denying the motion to dismiss, the court concluded that the Spellmon Memo was a final agency action under the APA because "the Spellmon Memo marks the consummation of the Corps' decision-making process regarding the Seattle District's Section 404 jurisdiction, and that this action has determined rights and obligations and gives rise to direct and appreciable legal

---

[4] Plaintiffs voluntarily dismissed their second cause of action for violation of 5 U.S.C. § 555 on May 8, 2019. (*See* Dkt. # 30.)

consequences." (2/5/19 Order (Dkt. # 21) at 22-23.) The court also found that the allegations in Plaintiffs' complaint were sufficient to establish facial standing to bring this action. (*See id.* at 23-28.)

**F.     The Remand Motion**

The Corps now moves to remand this case back to the Corps for further action. (*See* Mot. at 1-2.) The current Commander of the Northwestern Division of the Corps, Brigadier General D. Peter Helmlinger, P.E., declares that, if the court grants the Corps' motion, the Corps will rescind both the Spellmon Memo and any Corps policy that MHHW must be used to establish Section 404 jurisdiction in the Puget Sound. (*See id.* at 1, Ex. 1 (Helmlinger Decl.), ¶¶ 5-7.) Instead of replacing MHHW with some other datum like MAHT or HAT to uniformly determine the "maximum height reached by a rising tide" under 33 C.F.R. § 328.3(c)(7) in the Puget Sound, General Helmlinger declares that the Seattle District will instead "direct the public to the regulatory definition" of the high tide line found in 33 C.F.R. § 328.3(c)(7) and determine its CWA jurisdiction "on a case-by-case basis." (*Id.* ¶¶ 6-7.) This "case-by-case" or "case-specific" approach would "consider all available tidal data relevant to the [33 C.F.R. § 328.3(c)(7)] definition," including "the predictability and frequency of various tidal datums, [and] physical indicators where appropriate." (*Id.*)

According to General Helmlinger, the Corps estimates that it can implement these changes within 120 days of the court's order on this motion. (*Id.* ¶¶ 5, 8.) Although the Corps assures the court that it will rescind the policy of using MHHW as the exclusive means of establishing CWA jurisdiction in the Puget Sound in favor of this case-specific
ORDER - 8

methodology, the Corps does not explicitly concede that using MHHW was improper under the CWA in the first place or state that it will not use MHHW in its future case-specific assessments. (*See generally id.* ¶¶ 4-8.)

### III.     ANALYSIS

"A federal agency may request remand in order to reconsider its initial action." *Cal. Cmtys. Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012) (citing *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)). "Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Id.* (citing *SKF USA*, 254 F.3d at 1029). "[I]f the agency's concern is substantial and legitimate, a remand is usually appropriate." *SKF USA*, 254 F.3d at 1029.

The Corps claims that remand is appropriate for three reasons: (1) the Corps did not intend for the Spellmon Memo to "serve as a merits determination of whether, which or how a tidal datum might serve as a uniform and singular metric to determine the high tide line throughout the Puget Sound"; (2) because the Corps did not intend that the Spellmon Memo be a merits-based decision, the Corps "has not undertaken the inquiry necessary to determine whether and how a particular tidal datum . . . should apply at a particular site and project in the Puget Sound"; and (3) the Corps intends to rescind the Spellmon Memo and the Seattle District policy that gave rise to this lawsuit. (*See* Mot. at 7-9.) In response, Plaintiffs argue that the Corps is merely trying to evade an adverse decision from the court and that remanding this case to the Corps "would largely fail to resolve the problem that motivated this litigation" because the Corps does not concede that use of MHHW was improper. (*See* Resp. at 11-15.)

The court is not persuaded by the Corps' first two arguments in favor of remand—that the court's prior ruling was an "intervening event" or that the Corps needs remand because it has been unable to properly "take up and evaluate the full range of general and site-specific facts and considerations" necessary to make the kind of merits-based decision that the court found it had made. (*See* Mot. at 7-8.) The Seattle District has allegedly been using MHHW to determine the "maximum height reached by a rising tide" under 33 C.F.R. § 328.3(c)(7) for decades. (*See* Compl. ¶ 39 (alleging that the Seattle District adopted MHHW when Congress initially passed the CWA).) The court's ruling that the Spellmon Memo reaffirmed that longstanding policy (*see* 2/5/19 Order at 16 (concluding that the Spellmon Memo "indefinitely maintain[s] MHHW as the Seattle District's high tide line datum")), was not a new or intervening interpretation of the CWA or of the Corps' regulations. The court merely confirmed that the Corps' decision to continue using MHHW to set the Section 404 jurisdictional boundary was final agency action subject to challenge in this court. The Corps' suggestion that it has not been able to properly evaluate its jurisdictional boundary is also not persuasive. The court found that the Corps was presented with the opportunity to re-evaluate its decades-long approach to its CWA jurisdiction in the Puget Sound, but the Spellmon Memo "indefinitely stopped" that process. (*See* 2/5/19 Order at 17.) The Corps has had more than enough time to consider this issue.

For these reasons, if all the Corps was asking for was remand without any proposed remedial action, the court would have difficulty determining that such a request was "substantial and legitimate" or made in good faith—as is required for remand. *See*

*Cal. Cmtys.*, 688 F.3d at 992; *SKF USA*, 254 F.3d at 1029. However, the Corps has offered much more than that by declaring under oath that it will rescind the Spellmon Memo and the Seattle District's policy of using MHHW to set the high tide line under 33 C.F.R. § 328.3(c)(7) in the Puget Sound if the court grants its remand request. (*See* Helmlinger Decl. ¶¶ 5-8.) Due to these representations, the court concludes that Corps' request is substantial, legitimate, and made in good faith.

The court understands that Plaintiffs would prefer to receive a court order directing that the Corps must use HAT as the uniform marker of the high tide line in the Puget Sound. (*See* Compl. at 21, ¶¶ A-B.) But Plaintiffs' preferred remedy misconstrues the claims at issue in this case and the available remedies to redress their alleged injuries. Plaintiffs allege that the Corps' decision in the Spellmon Memo to continue using MHHW was arbitrary and capricious agency action. (*See id.* ¶¶ 61-62.) Even if the court agreed with Plaintiffs on that point, the court would not substitute its judgment for that of the Corps and direct the Corps to replace MHHW with the high tide line datum that Plaintiffs would prefer. *See Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 21 (1952) (noting that a court's authority to review and set aside agency action "is not power to exercise an essentially administrative function"); *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1173 (9th Cir. 2016) ("To determine whether the agency's decision was arbitrary and capricious, the court must consider whether the decision was based on a consideration of the relevant factors required by the statute, but the court is not empowered to substitute its judgment for that of the agency." (citations and internal quotations omitted)). Instead, the court could only remand back to the Corps for further

consideration. *See NLRB v. Enter. Ass'n*, 429 U.S. 507, 522 n. 9 (1977) ("When an administrative agency has made an error of law, the duty of the Court is to correct the error of law committed by that body, and, after doing so to remand the case to the [agency] so as to afford it the opportunity of examining the evidence and finding the facts as required by law." (citations omitted)); *Fed. Power Comm'n*, 344 U.S. at 20 ("[T]he function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the Commission for reconsideration."). In other words, even if the Plaintiffs prevailed on the merits of this case, the Spellmon Memo would be rescinded and the Corps would be free to do exactly what it proposes to do on remand— replace the current policy in the Seattle District with a "case-specific" adjudicative approach using the regulatory definition of high tide line in 33 C.F.R. § 328.3(c)(7).

Plaintiffs' concerns that the Corps will simply revert to using MHHW during its "case-specific" approach absent a court order holding that the Corps' use of MHHW was arbitrary and capricious are well-taken. (*See* Resp. at 11-13.) Admission that challenged agency action was wrongful is a hallmark of "good faith," *see, e.g.*, *Cal. Cmtys.*, 688 F.3d at 992 (approving voluntary remand and finding request was made in good faith where the agency "recognized" that its original reasoning was flawed and sought to explain its decision in an alternative manner), and the court is suspicious of the Corps' refusal to explicitly take a position on whether defining the high tide line using MHHW is lawful. But, again, the Corps is not merely requesting remand so that it can reconsider the use of MHHW to define the limits of the Corps' Section 404 jurisdiction in the Puget Sound; it has promised to rescind and replace the policy that Plaintiffs take exception to. (*See*

Helmlinger Decl. ¶¶ 5-8.) Instead of using MHHW, the Corps will apply the 33 C.F.R. § 328.3(c)(7) definition of high tide line on a "case-specific" basis using "all available tidal data relevant to the [33 C.F.R. § 328.3(c)(7)] definition," including "the predictability and frequency of various tidal datums, [and] physical indicators where appropriate." (*Id.* ¶¶ 6-7.) The Corps' decision to use an adjudicative process instead of a rulemaking process to set the high tide line is well-within the Corps' discretion. *See N.L.R.B. v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267, 294 (1974) ("[T]he choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion."); *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 203 (1947) ("[T]he choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency.").

Absent some evidence that the Corps will abuse this newly-proposed "case-by-case" adjudicative process for setting its CWA jurisdiction, the court will not assume, as Plaintiffs have, that the Corps will "simply perpetuate the ongoing harm to the Sound caused by the Corps' unlawfully narrow assertion of its jurisdiction." (Resp. at 5); *see also United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, No. C-09-4029 EMC, 2011 WL 3607790, at *5 (N.D. Cal. Aug. 16, 2011) (rejecting opposition to voluntary remand where party opposing remand "merely point[ed] to a vague theory that in the future, [the agency] will continue to [take the allegedly wrongful action]"). If, after remand, the Corps sets its CWA jurisdiction in a manner that Plaintiffs believe is

//

//

arbitrary and capricious, Plaintiffs may challenge that action.[5]  But the court will not reject the Corps' voluntary remand request and its offer to rescind the allegedly arbitrary and capricious agency action that Plaintiffs challenge in this case on the basis of Plaintiffs' suppositions of what the Corps may do in the future.

In conclusion, the court finds that voluntary remand is warranted in this case and, as such, the court GRANTS the Corps' motion for voluntary remand.  The court also finds that Plaintiffs' requested conditions for remand (*see* Resp. at 15-16) are unwarranted given the concessions that the Corps offers in this case.  The court takes the Corps at its word that it will, within 120 days of the date of this order, (1) rescind the Spellmon Memo, (2) rescind any policy in the Seattle District stating that the high tide line is defined using MHHW in the Puget Sound region, (3) implement a new "case-by-case" approach to defining the high tide line in the Puget Sound region, and (4) determine whether any public outreach is appropriate.  (*See* Helmlinger Decl. ¶¶ 5-8.)  The court ORDERS the Corps to submit a status report within 120 days of the date this order is filed that includes at least the following information:

1. Confirmation that the Corps has rescinded the Spellmon Memo;

2. Confirmation that the Corps has rescinded the policy that the Seattle District sets the high tide line using MHHW;

//

---

[5] If Plaintiffs choose to bring future challenges against the Corps and the Corps attempts to use voluntary remand again, Plaintiffs may point to the Corps' actions in this case as evidence of bad faith.  *See Gonzales & Gonzales*, 2011 WL 3607790, at *5 (recognizing that evidence of that agency "has a habit of routinely seeking voluntary partial remand in an effort to evade judicial review" is relevant to the bad faith inquiry).

3. Description of the steps the Corps has taken to implement the "case-specific" approach to determining the high tide line in the Puget Sound region outlined in General Helmlinger's declaration; and

4. Description of the Corps' efforts to inform the public of the Seattle District's new approach to setting the high tide line or an explanation of why the Corps determined that public outreach was unnecessary.

The Corps is warned that anything less than full and timely compliance with the Corps' proposed conditions on remand will not be well-taken.

## IV.  CONCLUSION

For the reasons set forth above, the court GRANTS the Corps' motion for voluntary remand (Dkt. # 37) and ORDERS the Corps to submit a status report within 120 days of the filing date of this order that is consistent with the terms of this order.

Dated this 30th day of October, 2019.

JAMES L. ROBART
United States District Judge